IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | 6:17-cr-00307-JDA-1 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Anthony Marquise Valentine, | ) | |

This matter is before the Court on a motion for sentence reduction filed by Defendant Anthony Marquise Valentine ("Valentine") pursuant to 18 U.S.C. § 3582(c)(1)(A). [Doc. 81.] Valentine is now serving a 180-month sentence for possession of a firearm in furtherance of a drug trafficking crime. [Doc. 75 (Judgment).] Because the applicable Sentencing Commission policy statement, *see* U.S.S.G § 1B1.13, and the 18 U.S.C. § 3553(a) factors do not support a further reduction of Valentine's sentence, the Court denies his motion.

## **BACKGROUND**

On July 17, 2017, Valentine pled guilty to Count 3 of the Indictment charging possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (the "instant conviction"). [Docs. 18, 50.] On July 18, 2018, Valentine was sentenced to 180 months' imprisonment to be followed by five years' supervised release. [Doc. 75.] On September 29, 2025, Valentine filed a motion for compassionate release. [Doc. 81.] Valentine argues that he suffers from serious medical conditions that substantially diminish his ability to provide self-care in the BOP and require long-term specialized care that he is not being provided, thus creating extraordinary and compelling reasons justifying his release under § 3582(c)(1)(A)(i). [Doc. 81-1 (Sealed) at 5.]

## **LEGAL STANDARD**

The United States Court of Appeals for the Fourth Circuit has held that a court "may not modify a term of imprisonment once it has been imposed[.]"  18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception to this rule is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Title 18, United States Code, Section 3582(c)(1)(A)(i), commonly known as the "compassionate release" provision, provides a statutory vehicle to modify a defendant's sentence.  *United States v. Wiggins*, No. ELH-13-512, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020).  Section 3582 was adopted as part of the Sentencing Reform Act of 1984. *Id*.  The statute originally permitted a court to alter a sentence only at the BOP's request. *See United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020).

In December 2018, Congress significantly modified the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5194 (2018).  This Court has held that, as amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a sentence of imprisonment

> upon motion of the Director of BOP, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever occurs first.

*Wiggins*, 2020 WL 4436373, at *2 (cleaned up).  And so, once a defendant has exhausted his or her administrative remedies, the defendant may petition this Court directly for compassionate release.  *Id*.

Under Section 3582(c)(1)(A), the court may modify a defendant's sentence if, "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable," it finds that:

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Wiggins*, 2020 WL 4436373, at *3 (internal quotation marks omitted).  And so, to be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must show that: (1) "extraordinary and compelling reasons warrant a reduction of his sentence"; (2) "the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction"; and (3) "the sentence modification is consistent with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13."  *Id*. (internal quotation marks omitted).  The United States Sentencing Commission (the "Commission") is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A).  28 U.S.C. § 994(t).

**DISCUSSION**

**Exhaustion of Remedies**

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); 18 U.S.C. § 3582(c)(1)(A).

Valentine represents that his request to the Warden for compassionate release was submitted on January 13, 2025 and denied on January 31, 2025. [Doc. 81 at 3.] The Government does not challenge the exhaustion requirement.

**Whether There is an Extraordinary and Compelling Reason for Reduction**

With respect to the November 1, 2023, amendments to the Sentencing Guidelines, the Commission included a policy statement addressing motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. *See United States Sentencing Guidelines Manual* Supp. App. C, amend. 814 (2023). The revised policy statement for U.S.S.G. § 1B1.13(b) provides that an "extraordinary and compelling" reason warranting compassionate release can exist under any of the following circumstances, each of which includes detailed requirements and caveats:

(1) Medical Circumstances of the Defendant

(2) Age of the Defendant

(3) Family Circumstances of the Defendant

4

      (4) Victim of Abuse

      (5) Other reasons

      (6) Unusually Long Sentence

U.S.G.G. § 1B1.13(b).

Section 1B1.13(b)(1) of the recently revised Policy Statement identifies four circumstances under which a defendant's medical condition may provide an extraordinary and compelling reason for relief. *See* U.S.S.G. § 1B1.13(b)(1)(A)–(D). First, under § 1B1.13(b)(1)(A), "a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia," may provide an extraordinary and compelling reason for relief.  Second, under § 1B1.13(b)(1)(B), an extraordinary or compelling reason may exist if the defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of . . . aging," and such condition or impairment "substantially diminishes" the defendant's ability to care for himself.  Third, under § 1B1.13(b)(1)(C), an extraordinary or compelling reason may exist if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

Finally, under § 1B1.13(b)(1)(D), relief may be warranted if:

    (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

5

> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

It is Valentine's burden to establish that his medical conditions create an extraordinary and compelling reason for compassionate release. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *see, e.g., United States v. Tucker*, No. 3:09-502-JFA, 2021 WL 3886416, at *3 (D.S.C. Aug. 31, 2021). Upon review, the Court finds that Valentine has failed to carry his burden.

Valentine alleges he is entitled to compassionate release because he suffers from serious medical conditions that substantially diminish his ability to provide self-care within a BOP; his medical conditions place him in the highest level of risk for irreparable harm and injury; and his medical conditions require long-term specialized medical care that is not being provided. [Doc. 81-2 (Sealed) at 5.] Valentine alleges that in January 2016, prior to sentencing, he was diagnosed with severe lymphedema of the lower left leg. [*Id*.] In April 2021, Valentine contracted a severe infection of this lower left leg due to cellulitis. [*Id*.] In January 2022, Valentine once again had a severe infection of the lower left leg requiring hospitalization. [*Id*.] In March 2024, Valentine developed wounds and lymphedema requiring a 12-week treatment at the hospital. [*Id*.] In August 2025, Valentine was again hospitalized with cellulitis for approximately seven days, affecting his lower left leg and requiring intensive IV antibiotics. [*Id*.] Valentine is seeking to serve the remainder of his sentence under home confinement to receive the urgent long-term

specialized medical care he requires to prevent further deterioration and risk for irreparable harm and injury. [*Id*. at 6.] Valentine has also provided a statement from Dr. Nomita Joshi of Peace Medical Center dated September 9, 2025, indicating that Valentine was last seen on June 28, 2017, and that he "has a high risk of death due to chronic conditions." [Doc. 90-1 at 1.]

The Government argues that Valentine has not met his burden of establishing "extraordinary and compelling reasons" under § 3582(c)(1)(A), and that the § 3553(a) factors weigh against reducing his sentence. [Doc. 99 at 5.] The Government represents that records from May 2025 and October 2025 show that Valentine has "resistant edema," sleep apnea, depression, hypertension, anemia, adjustment disorder, and obesity. [*Id*. at 6.] The Government also represents that Valentine has a diagnostic history including GERD, polyneuropathy, lower back pain, and gout, but he is not currently treated for these conditions. [*Id*.] Valentine's lymphedema is attributed to a tibial reconstruction surgery in 2016 and/or 2004. [*Id*. at 7.] He is seen by chronic care at the BOP and is prescribed medication to treat the conditions as needed. [*Id*.] Valentine's "resistant edema" is the ailment for which he appears to receive the most frequent and significant care, whereas his other ailments appear intermittent and easily treated with medication when necessary. [*Id*.] Valentine has been provided accommodations due to his edema, including elevator access and the ability to wear soft shoes, compression stockings, and sweatpants. [*Id*.] He is prescribed a bed wedge, medical shoes, and compression stockings, and sees a vascular surgeon as well. [*Id*.]

The Government contends Valentine has failed to provide evidence that he is unable to perform his daily living activities or that the facility has not provided specialized

7

medical care that he has needed. [*Id*.] To the contrary, the Government argues, Valentine has received care appropriate to his needs and such care appears to have improved his condition. [*Id*.]

The Court has reviewed Valentine's arguments, the letter from Dr. Joshi, as well as his medical records provided by the Government from the Bureau of Prisons [Docs. 100–100-5 (Sealed)] and finds no evidence of a condition that would rise to the level of an extraordinary and compelling reason for immediate release. Notes from a medical exam by Vascular Surgery, dated November 3, 2025, indicate as follows:

> Thank you for allowing us to participate in the care of Mr. Valentine. It is important for him to wear his compression stockings daily. He can perform [self-manual lymph drainage] as instructed by physical therapy to help stimulate lymph flow . . . . Since patient says his compression sleeve doesn't fit on his [lower left extremity], please resize him to ensure he has an appropriately sized pair of compression stockings. In the interim, he can use short-stretch compression bandages like Jobst short-stretch bandages or Comprilan.

[Doc. 100–5 at 32 (Sealed) (emphasis omitted).] An ultrasound of the lower extremities dated September 25, 2025, indicates "normal compression, augmentation, and signal throughout the visualized deep lower extremity veins" with "[n]o sonographic evidence of deep venous thrombosis." [*Id*. at 39.]

Valentine does not assert, nor is there is any evidence to suggest, that he is suffering from a terminal illness, *see* U.S.S.G. § 1B1.13(b)(1)(A), or that his ability to care for himself is "substantially diminishe[d]" by a "serious physical or medical condition," "serious functional or cognitive impairment," or his age, *id*. § 1B1.13(b)(1)(B). And, there is no basis on which to conclude that Valentine "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without

8

which the defendant is at risk of serious deterioration in health or death." *Id*. § 1B1.13(b)(1)(C). Further, Valentine has failed to provide any evidence that there is an ongoing "outbreak" or a "public" health emergency in any of the facilities where he has been housed. Thus, the Court finds that Valentine has failed to meet his burden and, thus, his motion is denied.

**Whether the Section 3553(a) Factors Weigh in Favor of Reduction**

Even if the Court found compelling reasons to reduce Valentine's sentence, the Section 3553(a) factors weigh against reduction due to Valentine's criminal history.

As an initial matter, the Court finds that the "nature and circumstances of the offense" weighs against reducing Valentine's sentence. According to Valentine's Pre-Sentence Report ("PSR") [Doc. 70 (court only)], on March 16, 2017, Greenville Police Department Vice and Narcotics Unit detectives responded to an address in Greenville, South Carolina, regarding a drug-related search warrant. [*Id*. ¶ 11.] Valentine was a known drug trafficker and his vehicle, a yellow Dodge Charger, was parked at the location as detectives arrived to execute the search warrant. [*Id*.] During the search, officers located two gallon-size bags of marijuana (215 grams and 358 grams), an opened box of clear sandwich baggies, $360, and a High-Point 9mm semi-automatic handgun (SN P1659976) loaded with four rounds of 9mm ammunition. [*Id*. ¶ 12.] Also located in the search was a digital scale and one box containing 49 rounds of Winchester 9mm ammunition. [*Id*.] Valentine confirmed the marijuana, ammunition, and US currency were his. [*Id*.] Valentine had prior drug convictions and was determined to be a career offender. [*Id*. ¶ 59.]

Similarly, the Court finds Valentine's history and characteristics weigh against a sentence reduction. Valentine, age 27 at the time of the instant conviction, had a criminal history dating back to age 17, which included convictions for possession of marijuana; accessory after the fact to a felony; possession of drug paraphernalia; resisting arrest; and driving under suspension; and two convictions for possession with intent to distribute marijuana. [*Id.* ¶¶ 20–27.] The sentencing court varied downward substantially from a range of 262 to 327 months to a sentence of 180 months in consideration of Valentine's age, history, and types of prior convictions. [*Id.* ¶ 59; Doc. 78 at 22–26.]

Valentine has currently served approximately eight years and three months of his 15-year sentence. [Doc. 99-1 at 3.] Thus, the Court finds that the factor considering the promotion of respect for the law and just punishment weighs against reducing Valentine's sentence. *See United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (noting that compassionate release is generally granted only "for defendants who ha[ve] already served the lion's share of their sentences"). Valentine was also sanctioned while in custody for possessing a hazardous tool. [Doc. 99-2 at 1.]

## CONCLUSION

For the reasons stated above, the Court finds Valentine has failed to show extraordinary and compelling reasons supporting a reduction in sentence. Based on the foregoing, and considering the relevant § 3553(a) factors, the Court finds that even if the threshold requirements of compassionate release were met—and the Court finds they were not—the Court would not grant Valentine's motion for compassionate release based on the present record before the Court. Thus, it is hereby ORDERED that Valentine's motion for a reduction in his sentence [Doc. 81] is DENIED.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

January 9, 2026
Greenville, South Carolina

### NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.